# Noble *v.* Mitchell.

*Action under Code, § 1206, against Agent of Unlicensed Foreign Insurance Company.*

| | |
|---|---|
| 100 | 519 |
| 102 | 127 |
| 100 | 519 |
| 104 | 438 |
| 100 | 519 |
| 107 | 290 |

1. *Constitutional law; construction of statute.*—Where a statute is assailed upon constitutional grounds, it is the duty of the court to adopt, if the staute will admit of it, such a construction as will bring it within the constitutional p wer of the legislature.

2. *Legislative power to exclude foreign corporations.*—The legislature of a State has authority to exclude foreign corporations altogether, and may impose any restriction it may deem proper as a condition upon which they may do business in the State.

3. *Code of 1886, § 1207, construed as amendatory of §§ 1205, 1206.*—Code 1886, § 1207, is to be construed as amendatory of sections 1205 and

[Noble v. Mitchell.]

1206 so as to substitute the words "corporation, association or partnership" for the words "insurance company," and, so construed, sections 1205 and 1206 are separable in their provisions, and, so far as they apply to, and are enforced against "foreign corporations" do not contravene any provision of the State or Federal constitution.

4. *Conditions of policy as to proof of loss, &c., not applicable to suit against agent under Code 1886, § 1206.*—Conditions of a policy requiring proof of loss within 60 days, and bringing of suit after 90 days, do not apply to a policy holder's suit under Code 1886, § 1206, to enforce the personal liability of the agent of an unlicensed foreign company for a loss covered by its policy.

5. *Proof of foreign corporation.*—A policy procured through Chicago brokers, purporting to be issued by "The F. I. Association of Philadelphia, Pa.," which in terms required proofs of loss at the office in Philadelphia, and which contained provisions subject to the orders of the "directors, pursuant to" the associations charter and by-laws and the laws of Pennsylvania. and was "signed by its president and attested by its secretary at Philadelphia," was evidence tending to show that the insurer was a corporation foreign to Alabama.

6. *Proof of agency within Code, § 1205.*—Under Code 1886, § 1205 which defines an agent for the insurer as any one who solicits insurance, or transmits an application or policy, or gives notice that he will transmit or receive them, or receives or delivers a policy, or inspects a risk, or makes or forwards a diagram, or does anything in the making of an insurance contract for another, where defendants solicited from plaintiff an order to place a risk, and asked a Chicago broker to place it, and the broker had the policy sent to the plaintiff, who sent his check for the premium to defendants, and they remitted proceeds to the broker; defendants were the insurer's agents though they had no correspondence with it and did not know that such company existed or had issued plaintiff a policy.

7. *Charge as to remarks of counsel.*—Where counsel in addressing the jury stated "that the evidence showed" a certain fact. such remark is not the assertion of such fact as within his knowledge and outside of the evidence, and the refusal of a charge that such statement of counsel is not evidence, is not error, although not warranted by the evidence, where the fact itself could have no material bearing on the issue.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This was an action brought by S. M. Mitchell against Noble and Ware, to recover the amount of an insurance policy held by the plaintiff. The cause of action was based on sections 1205 and 1206 of the Code of 1886. There was judgment for the plaintiff, and defendants appeal.

The complaint as amended sought to recover one thousand dollars damages, and alleged that the plaintiff was, at the time of taking out the policy of insurance, a merchant; and that on September 25, 1890, "plaintiff received from the defendants, who were engaged in a general insurance business in the city of Montgomery, an insurance policy purporting to have been issued by the Fairmount Insurance Association of Philadelphia, Pennsylvania, the said policy

[Noble v. Mitchell.]

contracting to insure from loss by fire the goods, wares and merchandise of the plaintiff, to the amount of one thousand dollars." The complaint then alleges that a short time after the receipt of the policy of insurance the plaintiff forwarded to the defendants a draft for the premium due on the said policy; that the premium was received by the defendants; that on December 22, 1890, during the period covered by the policy, the plaintiff's store-house with his goods, wares and merchandise, described in the policy, were destroyed by fire, without fault on the part of the plaintiff. The complaint further alleges that the Fairmount Insurance Association is a corporation not incorporated under the laws of the State of Alabama, and that said insurance association "had not procured a license from the Auditor of the State of Alabama to do business in said city for either the year 1890 or 1891." The defendants demurred to the complaint on the following grounds: 1st. It does not appear in said complaint that the defendants ever, at any time, acted in this State as agents for the Fairmount Insurance Association. 2d. It does not appear from the said complaint that defendants were, in any manner, parties to said policy of insurance. 3d. The complaint does not show that the defendants acted as agents of said Fairmount Insurance Company in respect to the alleged policy mentioned in the complaint. 4th. It is not shown by the complaint that the defendants, or either of them, undertook or promised to pay to the plaintiff the amount of said policy. All of these grounds of demurrer were overruled by the court, and issue was joined on the plea of the general issue.

The testimony for the plaintiff tended to show that at the request of one of the defendants, Ware, he authorized him to write one thousand dollars of insurance on his stock of goods; that some time after he received through the mail a policy for one thousand dollars on his stock of goods, which was issued by the Fairmount Insurance Association of Philadelphia, Pa.; that upon receipt of said policy he forwarded to the defendants a check for $32.50, which was the stipulated premium.

The plaintiff then introduced, against the objection and exception of the defendants, the policy which was received by him, and which was issued by the Fairmount Insurance Association of Philadelpha. The plaintiff introduced as a witness the chief clerk in the Auditor's office, who, after having testified that as chief clerk he kept a record of all the licenses issued by the Auditor, further testified, against the objection and exception of the defendants, that he had examined the record of

[Noble v. Mitchell.]

licenses issued to foreign insurance companies, on file during the years 1890 and 1891, and that there was no license issued to the Fairmount Insurance Association of Philadelphia, Pa., during that time. The loss of the stock of goods by fire was proved and not questioned.

The testimony for the defendants tended to show that they secured for the plaintiff a policy of insurance in the New Haven Security Company, and that shortly after the receipt of said policy, the said plaintiff sent them, through the mail, a check for $32.50 which was the amount of premium due on the New Haven Security policy. It was also further shown, however, by the testimony for the defendants, that upon the New Haven Security Company being informed of the issuance of said policy, the defendants were instructed to cancel the same; that in obedience to the said instruction they notified the plaintiff that the policy was cancelled; that thereupon, at the plaintiff's request, they undertook to place his insurance with some other company; that they notified plaintiff that they could not get his insurance in Montgomery, but thought they could get his insurance in Chicago; and that thereupon the plaintiff told them to go ahead. The plaintiff denied that he instructed the defendants to send to Chicago for the policy. All the other evidence in the case is sufficiently stated in the opinion.

The defendants excepted to the following portions of the court's general charge to the jury, which was given after the introduction of all the evidence:

"The plaintiff sued to recover of the defendants one thousand dollars, because he says that the defendants were agents of the Fairmount Insurance Company, a foreign corporation, who did business in this State without having first procured a license as the law requires. Now a foreign corporation, or any corporation, not incorporated under the laws of this State, is a foreign corporation within the meaning of this section of the statute, which requires it, before it does business in the State, to procure a license from the Auditor of the State; otherwise its contracts are illegal and void, if the parties seek to take advantage of it; and in addition to that, a penalty is imposed upon any person who acts as agent of said company.

"Now this agency may arise in one or two ways: one is, where the person, acting as agent, is such in point of fact, under the rules which usually constitute one person the agent of another. The other way in which he can become an agent is by doing either one of the acts which the stat-

[Noble v. Mitchell.]

ute, imposing a penalty for, says if he does, he becomes liable as an agent.

Now this statute says if the defendant transmits a policy of insurance, or a premium of insurance, that he is an agent, although, in point of fact, he has no connection with the company. So the question, under this complaint, here for you to decide is, whether the defendants in this case, transmitted to the plaintiff a policy of insurance of the Fairmount Association of Philadelphia.

That is what the plaintiff alleges defendants did: Now is that true? You are to decide that question in the light of all the evidence as persons of common sense, using your every day experience, and see what the evidence establishes.

Now, does it establish the proposition that the defendants transmitted to this plaintiff a policy of insurance of the Fairmount Association, or for the Fairmount Association? If they did this, then they are liable therefor for the loss, if any was sustained. Further, you must decide as to the amount of loss (and there is no controversy that this store was burned) and that the amount of injury resulting was as much as one thousand dollars. Plaintiff can not recover more than a thousand dollars, but anything under that. Now what would constitute a transmitting of the policy by the defendants to the plaintiff? Now under this statute, I instruct you that if you find from the testimony, and are reasonably satisfied, that it is true, that the defendants received of the plaintiff $32.50, and that he requested them to place insurance for him, and they sent the money to brokers in Chicago for the purpose of having such brokers to effect insurance for the plaintiff, and such brokers did effect insurance in the Fairmount Co., and the Fairmount Company sent a policy of insurance directly to the plaintiff, or sent it to the broker in Chicago and they sent it to the plaintiff, or it was transmitted to the defendants here, and they sent it to the plaintiff, that would be a transmitting of the policy of insurance by the defendants, because the defendants could not escape liability under this statute by sending a premium of insurance to Chicago brokers there, and having these brokers procure insurance and to transmit the policy to the plaintiff, although they did not know at the time they sent the money and did not give directions as to what company the insurance should be placed at. This is a new statute so far as enforcing it is concerned, and I was inclined to think that it was necessary that the defendants should be placed in the same position as if the company itself were sued, and that the plaintiff would have to make proof of loss and bring

[Noble v. Mitchell.]

suit in the time specified. I have examined it more carefully in connection with some other cases and my conclusion is, that it is not necessary, and that when the defendants violated the statute by becoming the agents of a foreign insurance company without license to do business in this State, that it was a duty devolving upon them to pay the amount of loss sustained by the plaintiff, and that loss is the amount of the policy, and that it is not necessary for the plaintiff to make proof of it in order to recover against the defendant. This is my charge.

So what I have stated to you, I give you as the law of the case. If you find from the testimony, and are reasonably satisfied with its truth, that the defendants received $32.50 and that they were to procure insurance for the plaintiff, and they, in pursuance thereof, sent the money to brokers in Chicago with directions to effect insurance, and the brokers did effect insurance and transmit the policy, either directly or indirectly, to the plaintiff, or to the defendants here, and the policy went into the hands of plaintiff, that that would be a transmitting of the policy within the meaning of this statute."

The defendants requested the court to give the following written charges, and separately excepted to the court's refusal to give each of them as asked:

(1.) "If the jury believe from the evidence that the defendants were not the agents of the Fairmount Insurance Company, and that they never received a premium as such agent, and they never remitted any such premium to said company, or to any one with direction to procure a policy in said company, then the plaintiff can not recover." (2.) "Under the complaint in this cause, it is encumbent on the plaintiff to prove that the defendants took or transmitted to the Fairmount Company a premium of insurance, or received or delivered a policy of insurance issued by said company. And if the jury believe from the evidence that the premium received by the defendants was the premium on another and different policy, and that it was sent to Chicago at the request of plaintiff, to brokers to be invested in insurance by them, and if they further believe from the evidence that said brokers secured the policy of the Fairmount Insurance Company without the knowledge, direction or consent of said defendants that it would be invested in a policy in that particular company, then the jury must find for defendants." (3.) "If the jury believe from the evidence that the plaintiff requested the defendants to send $32.50 to brokers in Chicago to pay a premium on a policy of insurance;

VOL. C.

[Noble v. Mitchell.]

and if they further believe from the evidence that the defendants gave no instructions to said brokers as to the company in which they should procure the policy, and if they believe that said premium was invested in payment of a premium to the Fairmount Insurance Company, on the policy in evidence, and that such payment was made without authority or direction from defendants; and if the jury further believe from the evidence that said policy in evidence was never received by defendants, or delivered by them or their direction, then the plaintiff can not recover, and the verdict must be for defendants." (4.) "If the jury believe the evidence they must find for the defendants." (5.) "Unless the plaintiff has reasonably satisfied the jury by the evidence that he made out a sworn statement of loss and forwarded it to the Fairmount Association of Philadelphia within fifteen days after the occurrence of the loss, then the plaintiff is not entitled to recover in this action." (6.) "Unless the plaintiff has reasonably satisfied the jury by the evidence that proof of loss was made as required by a clause in the policy, and that suit was not brought until after ninety days next succeeding the time of the filing of this proof of loss, the plaintiff is not entitled to recover in this action." (7.) "The burden of proof is upon the plaintiff to make out his case to the reasonable satisfaction of the jury; and before the plaintiff can recover of the defendants, in this action, he must make the proof as strong, as to every material fact, as he would have to make it if the Fairmount Insurance Association of Philadelphia were sued; and that to hold the defendants liable in this action, as agents, the measure of proof must be as full and convincing as would be required to make the Fairmount Association of Philadelphia liable if sued. If no recovery could be had against that association, if it were sued directly, then the plaintiff can not recover of the defendants." (8.) "The statement of plaintiff's counsel, in his concluding speech that the defendants received $32.50, and insured plaintiff in an insolvent company, is not evidence, and can not be considered by the jury as evidence in this cause. (9.) "The fact that the defendants transmitted $32.50 to Elsworth & Co., Chicago brokers, being the amount necessary to procure an insurance policy, does not, without more, make the defendants the agents of the Fairmount Insurance Association of Philadelphia, unless the jury believe from the evidence that the premium of insurance was remitted either by themselves or by another, with their knowledge and consent, to the Fairmount Insurance Company to procure the

[Noble v. Mitchell.]

policy of insurance, offered in evidence, the jury are not authorized to hold, without more, that the defendants are the agents · of the Fairmount Insurance Association of Philadelphia."

A. A. WILEY and JOHN M. CHILTON for the appellants.— The section of the Code on which this action was founded, is unconstitutional. It requires certain statements to be filed by foreign (not domestic) insurance companies; and, there-upon a license shall be issued by the Auditor to such company. Doing business without such license, the agent is liable for any loss covered by a policy issued through him, etc., Code Sections 1202-1206. By section 1207 it is enacted : "The term 'company' as used in this article, includes every company, corporation, association or partnership organized for the purpose of transacting the business of insurance." It was competent for the legislature, as to corporations not engaged in interstate commerce, to require the license, &c.; as corporations are not citizens within the meaning of section 1, Art. 14 of the Constitution of the U. S., declaring that the citizens of each State shall be entitled to the same privileges and immunities as the citizens of the several States; and issuing policies is not an act of inter-state commerce. But that provision of the Constitution does prohibit the States from imposing on any *person, company* or *association of persons or partnership other than corporations,* burdens or duties, as conditions to the exercise of a lawful business, which are not imposed on its own citizens in respect to the same business.—Cooley's Const. Lim. 15 and note; *Ward v. Maryland* 12 Wall., 418; *Machine Co. v. Gage,* 100 U. S. 679; *Gray v. Baltimore ib.* 434. In *Vines v. State,* 67 Ala., 73, citing approvingly Gage's case *supra,* it is said : the test is "whether there is any discrimination in favor of the State or of the citizens of the State which enacted the law. Wherever there is such discrimination, it is fatal." It is clear the statute is unconstitutional, in so far as it relates to persons *other than* corporations. Can its provisions be so separated as to declare it constitutional in part and unconstitutional as to the remainder? We say not. The statute all the way through uses *one* word, as descriptive of the foreign insurance organizations embraced within its provisions—the word "company." Sec. 1207 declares what the legislature intended by the use of this single word. The *meaning* of the word cannot be separated; the *legislative intent* cannot be divided. The statute uses the generic word "company," without designating the "different species included in that genus." It attempts by a "word not separa-

ble to impose a general duty—which, by section 1207, is
made applicable to conditions partly constitutional and
partly unconstitutional. The fact that the legislature, in
Sec. 1207 declared how the previous sections. should
be construed, is not a "designation of the different species,"
but is a mere legislative *interpretation.* If the words "asso-
ciation or partnership" be eliminated as unconstitutional,
the word "Company," as used in this article, cannot have
the meaning the legislature declares by Sec. 1207, it shall
have. The entire statute is therefore, unconstitutional. To be
separable, so that part can stand though another part fail,
the statute must be separable by its *terms* and not merely
by *construction.*— *U. S. v. Harris,* 106 U. S., 629; *Baldwin v.
Franks,* 12 J U. S. 678; Sutherland on Stat. Co. Sec. 170.
Actions of this kind, are called "penal actions." Their pro-·
visions are very strictly construed. The pleading on its
face, must disclose a liability *precisely* within the terms of
the statute, and the evidence must clearly sustain it. Some
of the authorities go so far as to assert that a mere prepon-
derance of evidence will not suffice in this class of cases.—
See penalties and Penal Actions; Am. & Eng. Ency. L. Vol.
18, 279; and numerous citations in notes; *Grooms v. Hannon,*
59 Ala. 510 and cases there cited. An application of this
principle will reverse this case as to several rulings below.
The complaint was bad. It does not allege that defendants
were *agents* of the ·Fairmount Association, but attempts to
allege two facts, which under Sec. 1205 of the Code would
constitute them agents; namely, a delivery of the policy
and the reception of the premium; but neither of these acts
are unlawful or can become acts of agency under the statute,
unless performed in this State. There is no allegation they
were so performed. Authorities *supra.* The second plea
sets up that defendant was required, before he could recover
under the policy, to furnish a statement of his loss, certified,
etc. and negatives the performance of these conditions pre-
cedent. And the 3d plea asserts that it was one of the
terms of the policy that no suit would be commenced until
after 90 days from making proofs of loss. It was the ob-
ject of the legislature to put the agent in the shoes of the
company, if the latter should be unlicensed. It imposed
upon the agent a liability for all *"loss covered by it"* (the pol-
icy.) Giving the. statute even a liberal construction, it
would never be held that it was intended to impose
a *greater* liability than the company would have been
liable to pay had it been sued. But construing it strictly
the question is relieved of all doubt. "A court cannot

[Noble v. Mitchell.]

create a penalty by construction, *but must avoid it by construction*, unless it is brought within the *necessary* meaning of the 'act creating it."—W. U. Tel. vs. Axtell, 69 Ind. 199. A loss to be "covered" by a policy, must be one that is recoverable under it. If the plaintiff had burned his house, or failed to pay the premium, or had done or omitted to do anything which would have deprived him of a right to recover, it is clear the loss could not be said to be "covered" by the policy. Furnishing preliminary proofs, is just as important, when made conditions precedent to a right to recover, as any other condition of the policy. The court erred in admitting the policy of insurance in evidence. (a) Its execution was not proved. The defendants had never had possession of the policy, were not the agents of the company that issued it, and were in no other way connected with the policy as to justify its introduction in evidence against them. Its genuineness should have been proved. (b) There was no evidence that the company issuing the policy was *a corporation*. This fact was alleged in the complaint, and issue having been joined, it was necessary for plaintiff to prove it, not only by way of conformity, but because the statute, *if valid at all*, could in no event effect any person *other than a corporation*. The bill of exceptions purports to set out all the evidence, and there was no evidence that the company was a corporation.—*Pa. Guano Co. v. Mullins* 66 Ala. 588; 3d Brick. Dig. p. 439 §§ 496, 498. The memorandum at the commencement of the policy, "Incorporated 1875," "Charter perpetual," was not evidence as against defendants. Where corporate existence is the issue, the original charter of the Company properly certified, is the only competent evidence, especially as against a third person who has not admitted corporate existence by dealing with the alleged corporation as such. The court should not have permitted counsel for plaintiff to state as a fact that defendants had insured plaintiff in an insolvent company. There was no evidence that the insurance company was insolvent, or that plaintiff had ever made demand of the company for the insurance. The court also erred in refusing a charge that said statement of counsel was not evidence.— *Cross v. The State*, 66 Ala. 484; *Brown v. Swineford*, 44 Wis. 282; *Hobbs v. The State*, 64 Ala. 39; *Sullivan v. The State*, 66 Ala. 48; *Wolffe v. Minnis*, 74 Ala. 389; *Scripps v. Reilly*, 35 Mich., 371. If we are not right in our contention that under the evidence, the court should have given the general charge, on the idea that no delivery or transmission of a policy, or receipt of a

premium is shown, but that the reverse is shown; it should, at least, have been left to the jury to say whether the act of the defendants in requesting the Chicago brokers to place the insurance was a mere device to evade the Alabama statute. In determining that the mere act of sending the premium to the brokers, made the defendants liable, the court invaded the province of the jury.

CHAS. WILKINSON, for the appellee.—1st. The legislature is sovereign and omnipotent so far as the express words of the Constitution do not prohibit; they can pass or enact any law that is not prohibited by the Constitution.—Sec. 6, Chap. 7, Cooly's Constitutional Limitations. And nothing but a clear violation of the Constitution, and a clear usurpation of the powers therein prohibited, will authorize the judiciary in declaring the act of the legislature, unconstitutional and void.—Page 674 Vol. No. 3, and note, Amer. & Eng. Encyc. of Law ; Sec. 25, Art. 4, of the Constitution of Alabama, which provides as follows : "The general assembly shall pass general laws under which local and private interests shall be provided for and protected." It follows that the legislature, necessarily, without such clause has a right to pass such laws as may be necessary to protect its citizens from fraud and impositions, such as complained of in this cause.—Sec. 4, Art. 14, of Constitution, "That no foreign corporation shall do business in this State without having at least one known place of business and an authorized agent, &c., was held to be constitutional in the case of *American Union Telegraph Co. v. Western Union Telegraph Co.*, 67 Ala. 30. The Supreme Court of the United States in the case of *Paul v. West Va.*, 8th Wallace, held "that the State might exclude the foreign Insurance Co. from its jurisdiction." If the State has a right to exclude a foreign insurance company, it certainly has a right to enact regulations and laws governing its conduct as a condition for doing business in this State. Sec. 1206 provides a penalty, not against foreign corporations, but a citizen of the State of Alabama, if he, acts as an agent, for a company, that has no license to do business in this State. The State certainly has the authority over its citizens and a right under its general police power to provide that the commission of a certain offense within the borders of the State would render the offender liable to such damages as may result from the illegal act.—Sec. 577, *et seq.*, Cooly's Constitutional Limitations ; *Van Hook v. The City of Selma*, 70 Ala. 361 ; *Ex parte Martial*, 64 Ala. 266. The acts are constitutional.—*A. U. T. Co. v. W.*

34

*U. T. Co.*, 67 Ala. 26; *Van Hook v. The City of Selma*, 70 Ala. 361; *Winter v. City Council*, 65 Ala. 403; *S. & N. R. R. Co. v. Morris*, 65 Ala. 193; *Edwards v. Williamson*, 70 Ala. 145; *Zeigler v. S. & N. R. R. Co.*, 58 Ala. 594.

COLEMAN, J.—The action was instituted by appellee to recover a loss covered by a policy of fire insurance, and arose under section 1206 of the Code of 1886. It is contended by the defendants that the act is unconstitutional, and that this is apparent when section 1206 is considered and construed in connection with sections 1205 and 1207. These three sections are as follows: Section 1205: "Any person, who solicits insurance on behalf of an insurance company, not incorporated by the laws of this State, or who, other than for himself, takes or transmits an application for insurance, a premium of insurance, or a policy of insurance to or from such company, or in any way gives notice that he will receive or transmit the same, or receives or delivers a policy of insurance of such company, or who inspects any risk, or makes or forwards a diagram of any building, or does any other thing in the making of a contract of insurance, for or with such company, other than for himself, or examines into, adjusts, or aids in examining into or adjusting any loss for such company, whether such acts are done at the instance of such company, of any broker, or other person, shall be held to be the agent of the company for which the act is done, and such company held to be doing business in this State." Section 1206: "Any person, acting as agent of any foreign insurance company which has not received the license from the auditor provided for, or shall so act after its expiration, is liable personally to the holder of any policy of insurance in respect to which he so acted as agent, for any loss covered by it; and shall forfeit, for each offense, the sum of five hundred dollars to be sued for in the circuit court where the delinquency occurs, by the solicitor, in the name of the State, and paid into the State treasury, less twenty per cent. retained by the solicitor for his services." Section 1207: "The term 'insurance company,' as used in this article, includes every company, corporation, association, or partnership, organized for the purpose of transacting the business of insurance."

The Virginia statute, construed in the case of *Paul v. Virginia*, 8 Wal. 168 provided "that no insurance company, not incorporated under the laws of the State, should carry on its business within the state without previously obtaining a license for that purpose," &c. This statute was construed

as applicable to foreign corporations, and it was held to be constitutional. Section 1205 of the Code is "Any person who solicits insurance on behalf of an insurance company not incorporated by the laws of this State," &c. If section 1205 of the Code, *supra,* stood alone we could put no other construction upon the words "an insurance company not incorporated by the laws of this State," than as having reference only to foreign corporations ; and so, if necessary to sustain the constitutionality of section 1206, *supra,* we would hold, that the term "foreign insurance company" as there used, referred only to foreign coporations, resting this construction upon the principle that, when a statute is assailed upon constitutional grounds, it is the duty of the court to adopt, if the statute will admit of it, such a construction as will bring it within the constitutional power of the legislature, (*Wilburn v. McCally,* 63 Ala. 436), but when construed in *pari passu* with sections 1201 and 1205, and other provisions appearing in the same article of the Code, as 1207, it would appear, that such was clearly the legislative intention It is well settled, that the legislature of the State has authority to exclude foreign corporations altogether, and may impose any restrictions it may deem proper as a condition upon which foreign corporations may do business in the State.—8 Wallace, *supra,* 181; *Ware, v. Shoe Co.,* 92 Ala. 145 ; *Nelms v. Land Mortgage Co. Ib.,* 160-1. It is contended however, that by section 1207 of the Code, *supra,* these provisions of the law are made to include "associations" and "partnerships" as well as "corporations" and in this respect discriminates against citizens of another State who may compose such "partnerships," and in this respect is violative of the constitutional provision which declares that "the citizens of each States shall be entitled to all privileges and immunities of citizens in the several States." We construe section 1207 as amendatory of the sections to which it refers, so as to substitute the words "corporation, association, or partership," for the words "insurance company." Thus construed section 1205, *supra,* would read as follows: "Any person who solicits insurance on behalf of a corporation, association, or partnership not incorporated by the laws of this State," &c., and section 1206, *supra,* would read: "Any person acting as agent of any foreign corporation, association, or partnership which has," &c.

By holding that section 1207 is amendatory of the other sections referred to in the manner declared, sections 1205 and 1206 are separable in their provisions, and so far as they are made to apply to, and are enforced against "foreign corpor-

[Noble v. Mitchell.]

ations" they do not contravene any provision of the State constitution, or the constitution of the United States.—8 Wallace, *supra*; *Baldwin v. Franks*, 120 U. S. Rep., 678; *S. & N. K. R. Co. v. Morris*, 65 Ala. 193; *McCreary v. The State*, 73 Ala. 480; *Powell v. The State*, 69 Ala. 10; *Vines v. The State*, 67 Ala. 73. The construction of the statute is one of difficulty and the one given to it, is not altogether satisfactory, but we are of opinion the language used in section 1207, considered in connection with other sections to which it refers admits of the interpretation given to it, and when the statute is attacked upon constitutional grounds, it is our duty to avoid such a construction if it can be done consistently, as will defeat the entire legislation of the State upon questions embraced in these statutes relating to insurance companies. We are of opinion that plaintiff was not required, in order to maintain his action under section 1206, *supra*, to comply with the provision of the policy, in the matter of making proof of the loss and forwarding the same to the insurance company, within sixty days, or the other provision that no suit should be begun within ninety days, and like provisions contained in the policy which the policy required to be complied with, before the institution of a suit against the company itself. The right of action is given against the agent who acts as such for a foreign insurance company which has not received a license from the auditor. It is the acting as agent for such a company that constitutes the "offense" which is the foundation of the suit. The recovery is limited to the loss sustained covered by the policy. The amount which may be recovered does not affect the right of action. It is the "offense" which forfeits to the State five hundred dollars, and not the failure to observe the stipulations, contained in the policy of insurance. We think there was some evidence tending to show The Fairmount Association of Philadelphia was a foreign corporation. It is fully proven that the policy was procured through brokers living in Chicago, and that it was sent to plaintiff by mail. The policy itself bears on its face evidence tending to show it was chartered under the laws of Pennsylvania. Its heading is, "The Fairmount Insurance Association of Philadelphia, Pa." The proofs of loss were to be "received at the office of the Association in Philadelphia, State of Penn." Other provisions were subject to the orders of the "Directors · · pursuant to its charter and by-laws and the laws of the State of Pennsylvania." It was "signed by its president and attested by its secretary at the city of Philadelphia, Penn." It is further contended

VOL. C.

[Noble v. Mitchell.]

by the defendant, that there is no evidence to show they acted as agents for the Fairmount Insurance Association. We do not think this contention maintainable.

Stated broadly and favorably for the defendants, the facts are that the defendants themselves had no correspondence whatever with the insurance company, had no information that The Fairmount Association Insurance Company had issed to plaintiff a policy, and did not in fact know there was such an insurance company in existence. We give the defendant the benefit of this extreme statement of the facts. On the other hand the plaintiff received and held through some agency an insurance contract in this insurance company. He had no correspondence with the insurance company, and had no transaction with any other person, directly or indirectly, than the defendants, in the procurement of the policy. The defendants solicited from the plaintiff an order to place an insurance risk, and the plaintiff authorized them to place a risk for one thousand dollars in some good company on his stock of goods. Not being able to place the risk in Montgomery, the defendants requested an insurance broker in Chicago generally to place the risk. This broker had the policy in question executed and forwarded to the plaintiff. The plaintiff had no notice or information of the correspondence between the defendants and the Chicago broker, or of that of the Chicago broker with the Insurance Company. The plaintiff sent his check payable to the defendants, to pay the premium on a policy. The policy bears date of September 25th, 1890 and the check for the premium bears date October 13th, 1890. This check was cashed to the defendants upon the presentation to the drawee, and as they testify, the proceeds were remitted by them to the broker in Chicago. The first policy obtained was cancelled before the application was made to the Fairmount Association Insurance Company, and necessarily before the latter policy was received by plaintiff. When defendants received and retained plaintiffs check for the premium, they knew necessarily that the money received by them could not be applied to the cancelled policy, and when they remitted the premium to Chicago, they knew it was not for a policy already cancelled by them. Certainly the acts of the defendant if believed by the jury are sufficient to constitute them agents within the sweeping provisions of section 1205 of the Code, supra. The acts of the legislature of 1879 page 26, and of 1884 sections 16 and 17 pages 19 and 20, codified as section 1205 supra, fixed a penalty and by the latter act, in addition to the penalty a personal

liability upon any person who did any of the acts therein specified, for such an insurance company, and we do not doubt, that it was the intention of the legislature to subject such a person or agent to the liabilities provided in section 1206 under which the present action was brought. The construction given to the statute by the court in its instructions to the jury accords with these conclusions. The charges requested by the defendant were properly refused. The propositions of law contained in them either asserted a contrary doctrine, or were abstract, or argumentative and misleading.

The bill of exceptions states that in the concluding argument of plaintiff's counsel to the jury, he stated "that the evidence showed that defendant had taken $32.50 from plaintiff and insured him in an insolvent company." The defendant objected to this statement of counsel and moved the court to exclude it from the jury. This question is presented in a somewhat different form, from that heretofore considered. It will be seen that the statement, is "*that the evidence showed,*" &c. This was not the assertion of a fact as being within the knowledge of counsel outside of and without reference to the evidence. Where counsel honestly differ as to the facts in evidence or are honestly mistaken as to correct inferences, from proven facts, there is not that transgression of the limits of legitimate argument, which will cause a reversal of the case. While we think the statement was not warranted by the evidence and its tendency may have been to prejudice the defendants before the jury, the fact itself, whether true or false could have no material bearing on the issue. The real issues were, whether the company was a foreign corporation doing an insurance business without a license, and whether the defendants acted as agents within the provisions of the statute. The solvency or insolvency of the corporation could exert no influence on the issues, and the verdict should have been the same in either event. *Cross v. The State,* 68 Ala. 476 ; *L. & N. R. R. Co. v. Orr,* 91 Ala. 548.

Affirmed.