DANIEL A. WEBSTER and Another v. P. FERGUSON.[1]

January 6, 1905.

Nos. 14,118—(112).

**Insurance Agent.**

An insurance agent, within the intent of section 87, c. 175, p. 437, Laws 1895, is one who assumes to act for or on behalf of any company not authorized to do business in this state, and it is not essential that he be appointed as the representative of such companies, or that he be the authorized agent of a duly licensed company.

**Liability of Agent.**

But a party is not liable upon the contract in respect to which he assumed to act, by request, unless the insured was deceived by his conduct, having reasonable grounds for believing that the companies involved in the transaction were duly authorized by the state.

**Same.**

*Held*, under the circumstances of this case, there was no liability on the part of defendant.

Three separate actions were commenced by plaintiffs in the district court for Houston county against defendant Ferguson. In the first action Security Fire & Marine Assurance Company was joined as defendant; in the second, American Trust & Insurance Company; and in the third, Commonwealth Savings & Insurance Company. The actions were brought to recover in the aggregate $4,000 upon policies of fire insurance issued by defendant companies through the alleged agency of defendant Ferguson. Jurisdiction of defendant companies

1 Reported in 102 N. W. 213.

was not obtained, and the actions against defendant Ferguson to enforce the personal liability created by section 87, chapter 175, Laws 1895, were consolidated and tried together before Kingsley, J. Upon conclusion of plaintiffs' testimony the court granted a motion to dismiss the action and from an order denying a motion for a new trial, plaintiffs appealed. Affirmed.

*Duxbury & Duxbury,* for appellants.

Assuming that the term "an insurance agent," as used in section 87, chapter 175, Laws 1895, refers to the agent of the unauthorized company issuing the policy, whether acting as an insurance agent under the insurance act or not, we contend that the act provides who shall be considered agents of such companies, and that the evidence shows defendant Ferguson to be such agent within the provision of the act itself, and that in order to establish the liability of such agent it is not necessary to establish his agency by the common-law rules of agency. For the statutory definition of "insurance agent" in other jurisdictions and the judicial construction thereof, see—Iowa: Laws 1880, c. 211, § 1; Code, §§ 1749, 1750; St. Paul v. Shaver, 76 Iowa, 282. Alabama: Code 1886, § 1205. Wisconsin: R. S. 1878, § 1977; Welch v. Fire Association, 120 Wis. 456, and cases cited; Schomer v. Hekla, 50 Wis. 575, and other cases cited under section 1977, supra. Illinois: Continental v. Ruckman, 127 Ill. 364. Texas: Sayles, An. St. art. 2943a. See also cases cited by appellee in McBride v. Rinard, 172 Pa. St. 546.

If it is necessary to show that defendant Ferguson was the agent of the companies on whose policies he is held to be liable within the meaning of section 87, the evidence in this case was certainly sufficient. Such facts have been held to show a party to be the agent of the company issuing the policy independent of any statute. Sias v. Roger Williams Ins. Co. (C. C.) 8 Fed. 183; Indiana v. Hartwell, 123 Ind. 177.

*J. C. Raymond* and *E. C. Raymond,* for respondent.

Defendant Ferguson was not the agent of the insurance companies in procuring the insurance. An agency is created by a contract either expressed or implied. To constitute an implied agency it must be

recognized as such by the parties. A mere insurance broker cannot be converted into an agent of the insurance company without some evidence of some action on the part of the company or from facts from which a general authority might be inferred. Fromherz v. Yankton, 7 S. Dak. 187; Gude v. Exchange Fire Ins. Co., 53 Minn. 220; John R. Davis Lumber Co. v. Hartford, 95 Wis. 226; Rahr v. Manchester, 93 Wis. 355; State v. Johnson, 43 Minn. 350.

LEWIS, J.

The object of this action is to recover from defendant Ferguson the amount of loss from fire under certain insurance policies issued by the defendant companies, which were not authorized to do business in this state.

Ferguson conducted a store at La Crescent in this state, and was local special agent of the Phœnix Insurance Company of Hartford. Plaintiffs owned a water-power mill in the vicinity, and applied to him for insurance upon it. The Phœnix Company having declined the risk, negotiations followed for insurance in other companies, which resulted in plaintiffs' taking out $4,000 insurance in defendant companies. The action against Ferguson is based upon the claim that he was an insurance agent at La Crescent, and that as such he obtained the policies for plaintiffs, and is personally liable for the loss, under section 87, c. 175, p. 437, Laws 1895. The defense was that Ferguson was not the agent of the companies accepting the risk within the meaning of the statute. At the close of plaintiffs' case, upon motion of defendant Ferguson the court dismissed the action.

We find no error in any of the rulings assigned, and this discussion will be limited to the question whether, under the evidence submitted by plaintiffs, it conclusively appears that Ferguson was not liable as an agent within the purview of the insurance code. It is admitted that Ferguson was neither the appointed nor acting general agent of these companies; that he had never before represented them, nor had any business relations with them whatever, and that his liability is to be judged wholly by his conduct with reference to this particular transaction.

Daniel A. Webster, one of plaintiffs, testified that about May 1, 1902, he applied for insurance, and, upon being informed by Ferguson

that his company declined the risk, the witness said, "I am up a stump for insurance," to which Ferguson replied, "No, I will try some place else." Following this conversation Ferguson wrote to a firm of insurance brokers at Chicago, in part as follows:

La Crescent, Minn., May 14, 1902.

Samuel C. Wilson & Co.,
    Chicago, Ill.

Gentlemen: D. A. Webster has asked me to write to you about insurance to the amount of $4,000 on his woolen mill, situated in the town of La Crescent, Houston Co., Minn. * * * [description of property]. Want only companies that have a right to do business in Minnesota. Send to D. A. Webster, La Crescent, Minn.

Yours truly,

P. Ferguson.

This letter was answered, calling for an application according to an inclosed form. A number of policies were then forwarded and received by Ferguson, and in reply, under date of May 24, he wrote Wilson & Co. as follows:

Gentlemen: I rec'd the policies for M. Webster & Sons. I told you in my other letter to send them direct to D. A. Webster, as I simply wrote for Webster. How much will Webster send you? Can you give him any special offer?

The policies received, five in number, were then turned over by Ferguson to Webster, who took them to a bank at La Crosse, Wisconsin, consulted with a bank official and an insurance agent there, and obtained the rating of the companies from the insurance book of 1901, and from such examination and consultation Webster selected the three policies here involved.

May 27 Ferguson wrote to the state insurance commissioner, St. Paul, inquiring if the three companies mentioned had a right to do business within the state, and asking this question:

Have I, as owner of property, a right to insure my property in any Co. that has a right to insure in the state, but has no local agent in this part of the state—have my policy come direct from company?

In reply he was informed that the companies mentioned were not licensed to do business in Minnesota, but that there was a provision of law giving owners of property the right to place business outside upon filing a bond to guaranty the payment of a two per cent. tax upon premiums; that it would probably be very difficult to prevent the property owner from writing outside for a policy, advising to steer clear of irresponsible companies, which could not or would not comply with the laws of the state. Then follows a letter to Wilson & Co. of date June 7, written by Ferguson, inclosing $60, and one of June 11 to Wilson & Co., signed "M. Webster & Sons, by D. A. W.," as follows:

> Gentlemen: I took the underwriters of Chicago Ins. card to my bank and they claim that it is not any good in Minnesota. They said you would know what to do. I do not care for insurance, but as I have to borrow some money I have to have it satisfactory to the bank. Please to fix it up so that it will be sat. to the Ins. Com. of Minnesota, and that will make it sat. to the bank.

Another letter to Wilson & Co., of date July 15, is as follows:

> I send back the Ins. policies. The bank say they may be all right in Chicago, but they won't pass muster in Minnesota. Find enc. cash for bal. due. Unless you have Ins. that is quoted in Minnesota, there is no use sending. I have to satisfy the banks. They must have it all right, or there is no use trying.
>
> Yours res.<br>M. Webster & Son.

The following letter, dated June 25, was also sent:

> S. C. Wilson & Co.
>
> Gents: My bank will not take, say there is no record in the state.                                    D. A. Webster.

The code (Laws 1895, p. 392, c. 175) defines an agent as follows:

> Section 25. * * * Any person who solicits insurance and procures the application therefor shall be held to be the

agent of the party thereafter issuing the policy upon such application or a renewal thereof, anything in the application or policy to the contrary notwithstanding.

Section 87. An insurance agent shall be personally liable on all contracts of insurance unlawfully made by or through him directly or indirectly for or in behalf of any company not authorized to do business in this state.

The code with reasonable certainty classifies insurance agents, and within certain limitations provides penalties for a violation of its terms. Thus section 88 makes one who negotiates a contract of insurance by an insurance company the agent of the company for the purposes of receiving the premium, notwithstanding terms to the contrary in the contract, and punishment is provided for fraudulently procuring the payment of premiums. Section 89 prohibits any officer or agent of a foreign insurance company from negotiating any business without a license from the insurance commissioner. Section 90 requires conspicuous designation of the place and nature of the business of foreign companies. Section 91 defines "insurance brokers," and provides for their license. Section 101 prescribes a penalty for any person who assumes to act as an insurance agent or broker without license, or

Who shall act in any manner in the negotiation or transaction of unlawful insurance with a foreign company not admitted to do business within this state.

It is apparent that the object of the legislature was to provide the citizens of the state with reliable facilities for securing insurance and at the same time protect them against irresponsible companies. To that end these restrictions were thrown around foreign companies, and if reasonable they should be upheld, and such have been the views of this court, so far as expressed. Seamans v. Christian, 66 Minn. 205, 68 N. W. 1065; State v. Beardsley, 88 Minn. 20, 92 N. W. 472.

Looking to the scope of the act and the manifest care with which agents and brokers are defined and their liability determined, we do not feel warranted in limiting the liability under section 87 to those who act as insurance brokers, to actual agents of duly authorized companies who assume to negotiate business for nonlicensed foreign

companies, or to those who are the accredited appointees of such unauthorized companies. For the purposes of this case we will concede that a person may constitute himself, by his conduct, an agent, within the meaning of section 87, without regard to whether he is the duly authorized agent of any licensed company, or the appointed representative of nonlicensed companies. But it does not follow that, because unlicensed persons are liable to punishment for in any manner transacting business with nonlicensed companies, under section 101, that such persons are liable to the insured for the amount of the loss sutained under section 87. The former section is consistent with the exercise of the police power of the state in regulating the business of insurance, the fine imposed commensurate with the object and for the benefit of the state, whereas the liability embraced in section 87 is of a civil nature, founded upon the law of contracts. It is declaratory of the law, rather than the imposition of a new remedy or a penalty. The liability does not exist in favor of the state. It grows out of the contractual relation of the parties, and can be enforced only by the insured, who has been made a victim in accepting unlawful insurance.

Although plaintiffs disclaim any knowledge of the correspondence, and deny that they knew what companies Ferguson was securing for them, it conclusively appears from the evidence that they had applied for insurance from different sources; that they knew Ferguson did not represent these companies; that they were in frequent consultation with him during the negotiations; that they personally examined into the rating, and accepted the policies; that they knew they were issued by foreign companies by S. C. Wilson & Co., Chicago. If they did not know the contents of the correspondence, and did not expressly authorize Ferguson to sign their names, they did know that the negotiations were pending on their behalf and at their request. Ferguson did not himself consult the bank or the La Crosse agent, or examine the rating card, and presumably the directions conveyed to Wilson & Co. in the letters of July 11 and July 15 were given after consultation with Webster. There is no evidence that plaintiffs were deceived by any word or deed of Ferguson and led to believe that the policies they accepted were issued by companies authorized to do business within the state. Ferguson's conduct all through shows that he was ignorant of the insurance laws, tried to post himself by inquiring from the

commissioner, and although he probably had no right to assume that Wilson & Co. had complied with the law after receiving word from the commissioner, yet his letter to Wilson & Co. of July 11 would indicate that he expected that firm to take out licenses for these companies. True, he retained a commission of $20, but that does not stamp the transaction with fraud as between him and plaintiffs.

Our conclusion is that plaintiffs accepted the services of Ferguson with knowledge of the nature of the insurance secured, that they were not deceived by him, and that their acceptance of the policies did not depend upon whether he were licensed to do business in this state. Plaintiffs having failed to make out a case, the order dismissing the action was correct, and is accordingly affirmed.

Order affirmed.

DOUGLAS, J. (dissenting).

I am unable to assent to the conclusion reached by the court. In my judgment defendant Ferguson is an insurance agent within the meaning of section 87, and such insurance contracts were, to quote the language of the act, "unlawfully made by or through him" on behalf of the companies not authorized to do business in Minnesota. It is not disputed the legislature has authority, in the exercise of the police power, to provide reasonable regulations in the matter of the writing of insurance throughout the state. The legislature may even bar foreign companies from doing business here at all, or establish conditions as a basis therefor, and as an incident provide that any insurance agent who directly or indirectly negotiates such insurance shall be liable as a coinsurer for all losses incurred by any company under the terms of the policy so negotiated. Statutory regulations of this nature exist in Connecticut (Laws 1889, p. 55, c. 107), and have been upheld by the courts of Pennsylvania and Alabama. McBride v. Rinard, 172 Pa. St. 542, 33 Atl. 750; Noble v. Mitchell, 100 Ala. 519, 14 South. 581. See also Paul v. Virginia, 8 Wall. 168; Hooper v. California, 155 U. S. 648, 15 Sup. Ct. 207. The purpose of the legislature in enacting section 87 was to protect the public from the evil results incident to the writing of insurance throughout the state by so-called "wild cat" companies, and the provision making the agent negotiating such unauthorized insurance liable upon the contract nego-

tiated was intended to operate as a check against the increase of such business.

Inasmuch as the court dismissed the action when plaintiffs rested, our inquiry is restricted to the question whether it appears prima facie that defendant by his acts brought himself within the provisions of this section, and thereby created a liability against himself. Daniel A. Webster, one of the plaintiffs, testified as follows:

> Q. Well, didn't you request him to write to other insurance agents? A. I did not. Q. You know, as a matter of fact, he did write to other insurance agents? A. I know it now; yes. Q. That he had written to other insurance agents? A. When? Q. To see if they couldn't place the insurance? A. In answering that question, when he told me that his company wouldn't take the risk I said I was up a stump for insurance, and he says, "No, I will write to somebody else." Q. What did you say when he said he would write to someone else? A. I said, "All right." Q. You knew his companies wouldn't take the insurance when he said he would try someone else? A. I knew he told me that.

It appears defendant knew, and plaintiffs did not know, at the time the latter paid the insurance premiums to defendant and he in turn remitted it (less his commissions) to the regular agents, that said companies were not authorized to do business in Minnesota. It is true plaintiffs were informed of this fact prior to their letter of June 11, but at that time the rights of all parties had become fixed, and the transaction closed. As appears from this letter, plaintiffs at that time (not the defendant as is suggested in the majority opinion) objected to the policies. At and prior to the time of the delivery of the policies plaintiffs were, as I read the record, misled into believing that the companies were authorized to do business in the state. Defendant assumed authority to collect the premiums, and retained a commission without criticism by the insurance companies, and without the knowledge of plaintiffs.

In my opinion the evidence quoted, read in the light of the undisputed facts, clearly tended to show that defendant solicited and negotiated the insurance in question, also that he was not only an insurance agent within the meaning of the term as used in section 87, but was the

agent of said companies, particularly so in view of the last paragraph contained in section 25 of said act, which provides that:

> Any person who solicits insurance and procures the application therefor shall be held to be the agent of the party thereafter issuing the policy.

To hold that defendant was not the agent of the insurance companies, but, on the other hand, the representative of plaintiffs, and therefore not liable, will, in my opinion, open the door in Minnesota to the transaction of insurance business by such companies, and furnish them an easy method of violating its public policy as expressed by the legislature.