# STATE v. W. L. SPALDING.[1]

## February 11, 1926.

## No. 25,042.

**Courts will consider intention of parties to ascertain whether writing is contract of insurance.**

1. Insurance is defined as "indemnity for loss in respect of a specified subject." To determine whether a written instrument embodies a contract of insurance, the courts will look behind the terminology to ascertain what the parties intended to accomplish. The fact that the dictates of conscience were substituted for the judgment of a court of competent jurisdiction to coerce payment of losses sustained by members of an association composed of owners of Ford cars falls short of demonstrating that the certificates issued to members are not contracts of insurance.

**When secondary evidence of contents of writing may be admitted against persons accused of crime.**

2. One charged with a crime cannot be compelled to produce a written instrument to be used as evidence against him, hence secondary evidence of its contents may be introduced by the state. The circumstances warranted the court in admitting an alleged copy of an instrument without proof that it had been compared with the original and was identical in form and contents.

**Conviction of unlicensed insurance agent.**

3. Direct proof of authority from an insurer to solicit applications for insurance is not essential to support a conviction under G. S. 1923, § 3348, prohibiting the solicitation of applications for insurance by unlicensed insurance agents.

Contracts, 13 C. J. p. 358 n. 95.
Criminal Law, 16 C. J. pp. 566 n. 76; 567 n. 86; 616 n. 90; 617 n. 4.
Insurance, 32 C. J. pp. 975 n. 6, 6 New; 1003 n. 63, 69; 1096 n. 26 New.

[1]Reported in 207 N. W. 317.

Defendant appealed from a judgment of the municipal court of St. Paul, Olson, J., convicting him of the offense of acting as an insurance agent without a license. Affirmed.

*Davis, Severance & Morgan,* for appellant.

*Clifford L. Hilton,* Attorney General, *William H. Gurnee,* Assistant Attorney General, and *Thomas Walsh,* Assistant Prosecuting Attorney, for respondent.

LEES, C.

Defendant was convicted of a violation of G. S. 1923, § 3348, prohibiting the solicitation of applications for insurance by unlicensed insurance agents, and has appealed from the judgment.

Dr. Herbert O. Winter, a witness for the state, testified that in November, 1924, he found an advertisement of the Ford Car Owners' Protective Association in his Ford sedan; that he was interested and wrote to Chicago, asking for more information about the association; that a few days later defendant called on him and told him the association was composed of owners of Ford cars; that its purpose was to protect members against loss; that, if he became a member, his car would be protected if the damage exceeded $15; that, if one had a loss, the others were assessed to pay it; that the cost was $27 the first year and $17 a year thereafter; that the protection covered theft, collisions, explosions, accidents and damages of various kinds; that the witness told defendant he carried insurance which would expire in February, when defendant might come again; that when defendant came back he said he was the agent of the association and obtained from the witness an application for membership in the association and a check for $15; that later the witness received by mail from Chicago an instrument, identified as Exhibit A and introduced in evidence over defendant's objection; and that thereafter he received notices of assessments and paid them.

On cross-examination he testified that defendant explained that the Ford car owners who signed applications would co-operate in protecting one another, but did not say that they would be insured and did not describe the protection as insurance; that he understood

from his talk with defendant that the payment of assessments was optional with him and the other members of the association.

By another witness, the state proved that defendant had a license to act as agent in Minnesota for the Bull Dog Automobile Insurance Company only, and that the Ford Car Owners' Protective Association had no license to do business in this state. When this proof was in, defendant moved for a dismissal and rested without offering any evidence when the motion was denied.

Exhibit A is unique. It is in the form of a certificate signed by C. Franklin Davis as agent. The application for membership is part of the certificate, and is declared to be evidence of the desire of the applicant to co-operate with other Ford car owners in dealing with losses, without entering into "contractual obligations of insurance or otherwise." It provides that:

"Each retains the right, when notified of another's loss, to act with reference thereto in accordance with his volition and the dictates of his conscience, and is satisfied to accept for any loss to his Ford car, occasioned by COLLISION ACCIDENTS, FIRE, THEFT, LIGHTNING, TORNADO and EXPLOSION, whatever contributions shall be made by the Ford car owners affiliated herewith, and that no one is obligated in any way to contribute to another's loss, but is given the opportunity, if self-interest so impels, to contribute to each loss upon a pro rata basis in accordance with AUTOMATIC RATE CHART and TABLE OF MAXIMUM LOSS on the reverse side hereof."

Each applicant contributes $15 as a "Service Fee," for the first year for "propaganda expenses" and, "if self-interest impels," is to contribute $5 each year thereafter, "for services rendered and to be rendered by my agent C. Franklin Davis." If a member sustains a loss, Davis is requested to give notice of the pro rata share of the loss to be "donated" by each member. The annual payments made by each member and five per cent of donations to cover losses are to be retained by Davis as compensation for his services and for expenses. Then follow these words: "The duty of said agent is understood to be one of service only and is in no way obligatory on

either party." Another provision cannot be adequately described except by setting it forth verbatim:

"I further elect that none of the Ford Owners co-operating in this movement or my agent herein named, are obligated to conform to the conditions set forth in this 'Application for Membership' unless all concerned feel that self-interest so impels, it being understood that this is a movement in which CONSCIENCE IS APPLIED TO BUSINESS because of the RIGHT RELATIONSHIP between all concerned, thereby placing all interested in a position to do or not to do as the conscience may dictate when the time comes to do the thing to be done. I understand that failure to donate the pro rata share of the losses each month (in accordance with the AUTOMATIC RATE CHART on the reverse side hereof within the time specified herein) shall terminate the status established by the memoranda contained in this 'Application for Membership,' and I further understand the FORD CAR OWNERS' PROTECTIVE ASSOCIATION to be a voluntary body of the Ford Car Owners themselves, and that this 'Application for Membership' does not come within the regime of contract because it is based entirely upon the free will donations of the Ford Car Owners throughout the country, who are co-operating in the manner set forth herein."

It is contended that Exhibit A is not a contract of insurance, hence defendant could not be convicted of the offense with which he was charged. Insurance is defined in the statute, G. S. 1923, § 3314, and in the opinions of this court. It is "indemnity for loss in respect of a specified subject." State v. Federal Inv. Co. 48 Minn. 110, 50 N. W. 1028; Physicians' Defense Co. v. O'Brien, 100 Minn. 490, 495, 111 N. W. 396.

The true character of an alleged contract of insurance cannot be concealed or changed by the use or absence of words. It is immaterial whether or not the contract on its face purports to be one of insurance. The courts will look behind the terminology to ascertain what the parties intended to accomplish. State v. Beardsley, 88 Minn. 20, 92 N. W. 472; Physicians' Defense Co. v. O'Brien,

supra. A reading of Exhibit A discloses a studied effort to avoid the creation of a legal obligation on the part of anyone. If, however, the holders of such certificates were impelled by conscience or by self-interest to pay money to C. Franklin Davis to indemnify another certificate holder who sustained a loss, he could certainly be compelled to turn the money over to the loser. Nevertheless, it is argued that the obligation which would arise in the case supposed is not contractual, but a duty created solely by law and, therefore, quasi-contractual in its nature. The point to the argument is that we have here nothing which can be called a true contract of insurance.

The plan outlined in Exhibit A was plainly intended to take the place of insurance on Ford cars. It is unusual in that it attempts to coerce payment of losses by substituting conscience for the judgment of a court of competent jurisdiction. It is. not to be supposed that no one would pay and that the whole scheme was futile and would result in no benefit to anyone except Davis.

The certificate evidences the agreement of all the parties concerned. To obtain the aid of the courts in the enforcement of his rights, the holder would have to introduce his certificate in evidence, for any claim he might assert would be referable to it.

It is true that the courts have rejected the doctrine that a moral obligation furnishes a sufficient consideration for a contract, and hold that a failure to keep a promise binding only on the conscience gives no right of action. Mason v. Campbell, 27 Minn. 54, 6 N. W. 405; Rask v. Norman, 141 Minn. 198, 169 N. W. 704, annotated in 17 A. L. R. 1296. The application of this principle might give a defense to a member sued for an assessment which his conscience had not impelled him to pay, but not to the agent if sued for money received to pay the loss.

We conclude that Exhibit A evidenced an agreement on the part of each member of the association to contribute to a fund from which those sustaining losses should be indemnified, and that the mere fact that contributions depended on the promptings of conscience falls short of demonstrating that the certificate is not a contract of insurance.

The original application was not produced. No notice to produce it was served on defendant. Citing Gasser v. G. N. Ins. Co. 145 Minn. 205, 176 N. W. 484, it is urged that the state failed to lay a sufficient foundation for the introduction of secondary evidence of its contents.

Defendant could not have been compelled to produce the application if he had it, for one charged with a crime cannot be required to furnish evidence against himself. State v. Minor, 137 Minn. 254, 163 N. W. 514.

If, as is probable, the application was in Davis' possession and he had been requested to give it to counsel for the state for use at the trial, it is possible but not likely that he would have done so, for it could hardly be expected that he would furnish evidence against the defendant. Under the circumstances, it was within the discretion of the trial court to receive secondary evidence of the nature and contents of the original application. This evidence consisted of the alleged copy of the application set out in the certificate. Defendant contends that there was no proof that it is a true copy. On examining Exhibit A, Dr. Winter testtified: "As near as I know this is a copy of the application sent." Standing alone, this was insufficient to prove that it was a true copy. Minneapolis Times Co. v. Nimocks, 53 Minn. 381, 55 N. W. 546; In re Gazett, 35 Minn. 532, 29 N. W. 347. But Dr. Winter also testified that, after he signed and handed the application to defendant, Exhibit A came to him by mail. This is important. The certificate was issued in response to an application taken by defendant and sent by him to Davis or the association. The trial court was justified in finding that the application is reproduced in the certificate. It is not to be supposed that Davis incorporated an incorrect copy therein.

The point is raised that there was no direct proof that defendant had authority to solicit applications for membership in the association. There is circumstantial evidence that he had. Dr. Winter's letter of inquiry addressed to the association was promptly followed by a call from defendant, who explained the plan of operation, represented himself to be the agent of the association and took the application. Then came the certificate and notices of assessments. It

is plain that Davis and the association could not be heard to say that defendant had no authority to solicit applications for membership in the association with the protection against loss which membership gave. Webster v. Ferguson, 94 Minn. 86, 102 N. W. 213; State v. Beardsley, supra.

Judgment affirmed.