HARTMAN & DANIELS v. DANIEL HOLLOWELL, Appellant.

**Fire insurance:** AGENCY.    One who upon his own request submits
1    the application of a property owner for fire insurance to a foreign agency, is the agent of the company accepting the same and issuing a policy, under Code, section 1749.

**Transaction of business of foreign companies:** STATUTES.    Issuance
2    and delivery of a fire policy by a foreign insurance company, covering property in this State, constitute the transaction of business in the State within the meaning of the statutes regulating the insurance business.

**Unauthorized insurance:** LIABILITY OF AGENT.    Under the statutes
3    regulating the transaction of insurance business, an agent effecting insurance on property in this State with a foreign company which is insolvent and unauthorized to do business in Iowa, is personally liable to the assured in case of loss, whether he actually knew of the insolvency of the company or not.

**Presumption of authority to insure.**    The assured may rightfully
4    assume that a company issuing a policy of insurance is authorized to do business in this State, in the absence of information to the contrary.

*Appeal from Clinton District Court.*— HON. P. B. WOLFE, Judge.

TUESDAY, FEBRUARY 14, 1905.

ACTION for damages. From judgment as prayed, the defendant appeals.— *Affirmed.*

*L. E. Schmitt* and *A. L. Pascal,* for appellant.

*Barker, Ellis & McCoy,* for appellees.

LADD, J.— On or about April 15, 1902, there were issued to plaintiffs two policies of insurance — one by the Great Britain Insurance Corporation, Limited, of London, England, and the other by the Northwestern Fire Insurance Company of Chicago, Ill., for $1,000 each — covering their implement warehouse and feed mill, together with machinery, etc., located at Low Moor for one year. The property was destroyed by fire in June following, and subsequently judgments were obtained against each company for $950. These have not been collected, and in this action recovery is sought against the defendant on the ground of negligence in acting as agent without authority for companies not entitled to do business in the State and insolvent when the policies were issued. The petition also stated a cause of action for deceit, but this was not submitted to the jury. It appears that some time in February, 1902, defendant had solicited the plaintiffs for insurance, and, as recording agent, issued to them a policy in another company; but this was canceled, owing to its rule against carrying risks on feed mills. Some farther effort was made, when defendant advised them he might be able to get the risk written through the agency of a firm in Chicago, and with plaintiffs' approval he addressed a letter to C. A. Van Anden & Co., saying: " Can you place the enclosed risk for me? * * * Place it in the best company you have. Send statement of company." In response to this Van Anden &

Co. sent the policies in question to him, and he forwarded them to plaintiffs, inclosing a letter stating: " These are subject to your acceptance within one week; if not accepted return; if satisfactory send check for $40. I succeeded in getting it at a $2 rate. I enclose financial statement of both companies. These are both stock companies. $40 will be the absolute cost." The plaintiffs retained the policies and paid him the premium.

I. Appellant first contends that the evidence failed to show that he should be regarded as the agent of the companies. Section 1749 of the Code provides that " any person who shall hereafter solicit insurance or procure applications therefor shall be held to be the soliciting agent of the insurance company or association issuing a policy on such application, or on a renewal thereof, anything in the application, policy or contract to the contrary notwithstanding." The evidence in behalf of plaintiffs tended to show that defendant requested them to allow him to procure insurance on their property through the agency in Chicago, and if the jury so believed, then he was, under the law as stated in this statute, agent for the companies issuing the policies delivered through him. *St. Paul Fire Ins. Co. v. Sharer,* 76 Iowa, 282. True, he denied having made such request, and insisted that what he did was at the instance of the plaintiffs. This merely raised a conflict in the evidence, which was fairly submitted to the jury.

II. Neither company was authorized to do business in Iowa or Illinois, and the evidence showed both to have been insolvent when the policies were issued. Nor did the defendant have a certificate qualifying him to act as their agent in this State. The court instructed the jury that: " If you find from the evidence that the defendant was the agent of the insurance companies, and that as such agent he caused to be written and procured for the plaintiffs the policies in question, and

1. FIRE INSURANCE: agency.

2. TRANSACTION OF BUSINESS BY FOREIGN COMPANIES: statutes.

on your further finding that the policies in question were written by companies not authorized to do business in this State, and that said companies were at the time said policies were written insolvent, that the plaintiffs did not know when they accepted and paid for said insurance that said companies did not have authority to write insurance in Iowa, the defendant, as their agent, is liable, and your verdict should be for the plaintiffs." This was a correct statement of the law. The statutes regulating the transaction of the insurance business in this State were enacted for the protection of policy holders, and especially to guard those seeking indemnity against loss from deception by companies incapable of performing their contracts and agents not authorized to bind them.

By section 1721 of the Code foreign companies are prohibited from directly or indirectly taking risks or transacting any insurance business in this State, unless possessed of $200,000 of actual paid-up capital; and by the section following, as a condition precedent to doing business, each is required to file with the Auditor of State authority to accept service of notice of the beginning of suit:

A certified copy of its charter or deed of settlement, together with a statement under oath of the president, vice president or other chief officer and the secretary of the company for which they may act, stating the name of the company, the place where located, the amount of its capital, with a detailed statement of the facts and items required from companies organized under any law of the State in which such company was incorporated; and no agent shall be allowed to transact business for any company whose capital is impaired by liabilities as specified in this chapter to the extent of twenty per cent. thereof, while such deficiency shall continue.

Only upon compliance with these requirements will any foreign company become entitled to do business and receive a certificate from the Auditor of State. Section 1724, Code.

Section 1725 prohibits any agent acting for any such company "in taking risks or transacting business of insurance in the State, without procuring from the Auditor of State a certificate of authority to the effect that such company has complied with all the requirements of this chapter." Section 1747 requires all companies doing business in this State to conform with the foregoing provisions, and provides that:

> Any officer, manager or agent of any insurance company or association who, with knowledge that it is doing business in an unlawful manner, or is insolvent, solicits insurance with said company or association, or receives applications therefor, or does any other act or thing towards procuring or receiving any new business for such company or association shall be guilty of a misdemeanor, and for every such act, on conviction thereof, shall be adjudged to pay a fine of not less than one hundred nor more than one thousand dollars, or be imprisoned in the county jail not exceeding one year, or be punished by both such fine and imprisonment.

> Section 1748:

> Any president, secretary or other officer of any company organized under the laws of this State, or any officer or person doing or attempting to do business in this State for any insurance company organized either within or without this State, failing to comply with any of the requirements of this chapter, or violating any of the provisions thereof shall be fined in a sum not exceeding one thousand dollars, and be imprisoned in the county jail for a period of not less than thirty days nor more than six months.

Issuing these policies and delivering them to plaintiffs was doing business in this State within the meaning of these statutes. *Seamans v. Zimmerman,* 91 Iowa, 363; *Fred Miller Brewing Co. v. Council Bluffs Ins. Co.,* 95 Iowa, 31.

And the defendant, in soliciting insurance in the State, if he so did, was equally guilty of violating the law. By soliciting the insurance and delivering the policies he impliedly represented the companies were authorized to do business here, and he to act for them. Had this been true, it is

to be assumed that they would have been solvent, and their

**3. UNAUTHORIZED INSURANCE: liability of agent.** policies enforceable. Plaintiffs, in the absence of knowledge to the contrary, had the right to assume that both the companies and the defendant had complied with the law. That neither had so done must have been known to the defendant, as he had no certificate from the State Auditor as their agent. He may not have known that they were insolvent, and this is all that saves him from liability in an action for deceit. But he was holding himself out as being in the business of procuring insurance, and thereby assumed to have the requisite information, ability, and skill to conduct such business properly, and in doing so was bound to exercise reasonable care and judgment with respect to the indemnity for which insurance was sought. In seeking patronage he must be held to have been cognizant of the law with reference to foreign companies doing business in the State, and the necessity of his being authorized to act by the Auditor of State; and if in ignorance of the statutes or the criminal consequences resulting therefrom he was negligent in the matter of not possessing the degree of knowledge exacted from those following his vocation; so, too, was he negligent, if, having such knowledge, he solicited and procured the insurance for companies prohibited from doing business in this State. In either event he is justly chargeable with the injurious consequences to those whose confidence in his assumed judgment and skill has been misplaced. The defendant does not pretend to have supposed these companies were authorized to do business in the State, and his only apology to relieve him from the charge of negligence is that he acted at the instance of the plaintiffs in obtaining insurance from companies neither knew anything about. But whether he so did was an issue for the jury to determine. As directly in point, see *Burges v. Jackson* (Sup.) 46 N. Y. Supp. 326, approved by the Court of Appeals, 57 N. E. Rep. 1105; *Morton v. Hart,* 88 Tenn. 427, 12 S. W. Rep. 1027; *Landusky v. Beirne* (Sup.) 80 N.

Y. Supp. 238; approved by the Court of Appeals, 70 N. E. Rep. 1101.

In *Morton v. Hart,* the court, after referring to statutes substantially like those of this State, said:

> The defendants were undertaking to do an unlawful and prohibited business. In such undertaking they must be held to guaranty the solvency of the concern they represent to the extent of the requirements of our statutes as cited, and that losses will be paid here. The law was intended to protect the citizen policy holder, and give him redress in the courts of this State. If the company was not worth $200,000 in actual paid-up cash capital, the undertaking of the agent supplies that want for the benefit of the insured; and, if loss occurs, the agent must respond to the insured, and look to his principal for indemnity.

See *McCutcheon v. Rivers,* 68 Mo. 122. Expressions contrary to this view may be found in *Jones v. Horn,* 104 Mo. App. 705 (78 S. W. Rep. 638), but the decision is based upon the failure to prove the company for whom Horn acted, insolvent.

III. It cannot be said that defendant's letter accompanying the policies required plaintiffs to investigate and determine for themselves. They had the right to assume, in the absence of information to the contrary, that **4. PRESUMPTION OF AUTHORITY TO INSURE.** the companies were such as were entitled to do business in this State. The letter contained nothing to the contrary. If they were advised that they would have to take their own risk as to the character of the companies, this happened in a conversation. But that issue was left to the jury. The rulings on the admissibility of the evidence were so manifestly correct as not to demand discussion. The verdict has such support in the evidence as to preclude any interference on our part.— *Affirmed.*