## MAIER SCHWARTZ v. STATE.

[60 South. 732.]

1. JURY. *Competency. Opinion. Criminal law. Appeal. Trial. Presence of accused. Verdict. Presence of counsel. Code* 1906, *section* 4636. *Constitution* 1890, *section* 26.

   A juror is not incompetent as having a fixed opinion where the evidence on his voir dire examination showed he simply had an impression as to the guilt or innocence of the accused derived chiefly, if not entirely, from press accounts of the crime.

2. CRIMINAL LAW. *Conduct of trial. Presence of accused. Code* 1906, *section* 4636.

   Under Code 1906, section 4636, so providing, the supreme court will not reverse a case on appeal because the record fails to show that accused was present when the jury was impanneled.

3. CONSTITUTION 1890, *section* 26. *Counsel. Conduct of trial.*

   Under section 26, Constitution 1890, so providing, the accused in a criminal prosecution has "a right to be heard by himself,

or counsel or both;" and these rights cannot be denied or abridged, nor can the courts require the accused to secure counsel, or impose counsel upon him, unless he request the court to appoint counsel.

4. CRIMINAL LAW. *Conduct of trial. Presence of counsel.*

Where on the. trial of accused for murder his counsel absented himself and refused or neglected to come into court when the jury returned their verdict and no request was made by the accused that he be permitted to have his counsel present before the verdict was received or sentence imposed upon him, it was not error for the court to receive the verdict and impose sentence in the absence of counsel for the accused and he was not thereby denied any right guaranteed him by the Constitution or the laws.

APPEAL from the circuit court of Adams county.

HON. E. E. BROWN, Judge.

Maier Schwartz was convicted of murder and appeals.

One of the assignments of error on appeal, urged by counsel, is that the juror Duffy was disqualified by reason of having formed an opinion as to the guilt or innocence of the defendant.

The *voir dire* examination of this juror is as follows: "Q. . . . You are qualified to serve on a jury in this county? A. Yes, sir. Q. You are fixing to try Maier Schwartz for the killing of a colored hackman by the name of Jackson Fletcher. Do you know the defendant? A. No, sir. Q. Have you heard what purported to be a detailed statement of the facts in this case? A. Yes, sir. Q. From what you have heard, have you formed or expressed an opinion as to the guilt or innocence of the defendant? A. I rather think so. Q. That was just from street talk and rumor? A. Yes, sir. Q. If you are accepted as a juror in this case, can you ignore what you have heretofore heard, and any opinion you might have from rumor, and try this case solely and alone on the law and the evidence as you hear it here on this trial? A. Yes, sir. Q. And lay aside any impression you may have from what you have heard or read? A.

Yes, sir. Q. . . . . Have you any prejudice or bias either for or against the defendant in this case? A. No, sir. Q. If you are accepted on the jury, do you feel that you can be perfectly fair and impartial, give the state a fair trial, and the defendant a fair trial? A. Yes, sir. Q. He is charged with killing a colored man. Would the fact that he is charged with killing a colored man make any difference with you in the case? A. No, sir. Q. Could you try the case the same as if it was a case where a white man was charged with killing a white man, or a colored man with killing a colored man? A. Yes, sir. Q. You could try the case the same? A. Yes, sir. Q. Have you any conscientious scruples against the infliction of the death penalty in proper cases where the evidence justifies it? A. I cannot say that I have. By Mr. Thames for the defendant: Q. Mr. Duffy, how long have you lived here in Natchez? A. About four years. Q. You read all the newspaper accounts of this killing, didn't you? A. I cannot say that I read all of them. I read quite a number of them. Q. You have heard it discussed since that time? A. Yes, sir. Q. You have heard several opinions expressed? A. Yes, sir. Q. And you have formed an opinion of your own about it? A. Yes, sir. Q. You have an opinion now? A. Yes, sir. Q. And it is a fixed opinion, isn't it? A. I have just formed an opinion. Q. Have you that opinion now? A. Yes, sir. Q. What kind of an opinion is it? Is it a fixed opinion? A. Yes, sir; it is one that could be removed by evidence. Q. It would take sworn evidence to remove it? A. Yes, sir. Q. As you stand now, you have an opinion on your mind, based on the newspaper accounts of this affair, and from what you have heard discussed by people who are supposed to know the facts. You have that opinion, and you will go in the jury box with that opinion on your mind? A. Yes, sir. Q. And from that you have formed a bias or a prejudice? A. I cannot say that I have any bias or prejudice. Q. I don't mean

prejudice in an offensive sense but you have a bias in regard to it, haven't you? A. I don't quite catch what you mean by bias or prejudice. I have formed a certain opinion, based on what I have learned. Q. From what purported to be the facts in the case? A. Yes, sir. Q. You are not one of those men who form light opinions, are you? A. No, sir. Q. You have an opinion? A. Yes, sir. Q. And having once formed an opinion you are sort of biased, or rather you lean toward your own opinion, don't you? A. To a certain extent; yes. Q. To a pretty big extent, don't you? No answer. Q. All I want to do is to try to get a fair and impartial jury to try this man. I don't mean anything offensive in the world by asking these questions. A. I don't take it that way. Go ahead and ask them. Q. You do have a leaning toward your own opinion? A. Yes, sir. Q. And you have formed an opinion, and you have that opinion now, touching the guilt or innocence of the accused? A. Yes, sir. Q. Do you, as an honest, fair-minded man, think that you are a fair and impartial juror as you sit there in the box now? A. Well, I would say no. By Mr. Reilly for the state: Q. You say that you have heard something of this case and saw the newspapers' report of it? A. Yes, sir. Q. From these reports that you heard, would you say that you have a mere impression, or did it rise to the dignity of an opinion? A. It was simply an impression. I don't form a fixed opinion from things that I hear; but the account that I read of it, and from what I heard of it, made some impression on me. Q. If you should be taken as a juror in this case, do you feel on your oath that you could disregard that opinion and try this case solely on the law and the evidence as you hear it here on this occasion? A. Yes, sir. Q. And in rendering your verdict render it upon the sworn testimony in this case, and not let what you have heretofore heard influence your judgment? A. Yes, sir; I can do that. Q. Well, will you do it? A. Yes,

sir. Q. And, if you are accepted as a juror in this case, you will render your verdict solely upon the evidence as you hear it here on the stand and the instructions as given by the court? A. Yes, sir; I certainly would. Q. And the impression you have in your mind, from what you have heard of this case heretofore, would not influence you in rendering your verdict in any way whatsoever? A. No, sir; I would simply go by the facts. Q. And disregard and ignore any impression you might have formed from hearing about the case? A. Yes, sir. Q. Have you any desire resting on your mind to see one verdict rendered in this case, rather than another? A. Not the slightest. Q. You feel fair to the state and fair to the defendant? A. Yes, sir. Q. Your only desire is to reach a verdict in accordance with the law and the evidence as you hear it here? A. Yes, sir. Q. And if you are taken as a juror you can and will render a verdict solely and alone upon the evidence and the law as given you in the case? A. Yes, sir. By Mr. Reilly for the state: If the court please, I think the juror is competent. By Mr. Thames for the defendant: Q. Mr. Duffy, of course you know that we lawyers have a great many different ways to answer questions; but the only thing we want to get at is a common sense view of it. You know down in your heart right now, as you told me a while ago, that either the state or the defendant one has got a burden to bear if you are taken in the jury box— either the state or the defendant; either the state, as prosecutor in this case, or the defendant, who is being tried for his life. In your mind now you have a bias created by an opinion that you previously formed, and the state or the defendant in this case, either one or the other, has got to bear the burden of that bias you have in your mind now. A. I don't exactly like the term bias. I am not biased to the case at all. I am simply in this position that the public accounts that I have read have made a certain impression on my mind. I am in no

way biased whatever; but the fact is this: That going into the jury box in this condition, that impression that has been made on my mind would have to be removed. Q. . . . And it would take sworn evidence to remove it? A. Yes, sir. Q. And you believed then and there the reports that you read in the newspapers? A. To a certain extent. Q. You believe them now? A. Yes, sir; until they are disproved. Q. And the burden of disproving those things would be upon the state or the defendant one? A. Yes, sir. Q. Then, as an honest man, with that burden on your mind, do you think that you are a fair and impartial man to try this man? A. I would say no. (The juror was here challenged for cause by the defendant, the court overruled the challenge, and the defendant then and there excepted to the ruling.) "

*McLaurin & Thames,* attorneys for appellant.

In *Dyson* v. *State*, 26 Miss. 380, our court, speaking through HANDY, J., used this language: "Out of the abundant tenderness for the right secured to the accused by the Constitution, to be confronted by witnesses against him, and be heard by counsel or himself, our court has gone a step further and held that it must be shown by record that the accused was present in the court pending the trial. This is upon the ground of the peculiar sacredness of this high constitutional right. It is also true as has been held by this court, that nothing can be presumed for or against the record, except what appears substantially upon its face." This omission in the record is a fatal error.

The juror, F. J. Duffy, on his *voir dire*, shows conclusively that he was not a competent juror to try this case. The juror, Duffy, said that he had read quite a number of newspapers and that he had discussed it since that time, and had heard several opinions expressed.

We call the court's attention to the case of *Klyce* v. *State*, 31 So. 340, decided February 10, 1902. This case

is exactly on allfours with the case now before the court.
For CALHOUN, J., said: "We dissent with great diffidence
from the opinion of the able judge who presided, that
this person was a competent juror, not to be challenged
for cause. We are sure that he will concur with us that
no accused person would think that the juror impartial,
if it concerned his life or liberty, and this is not a bad
test.

This case just mentioned was very ably decided by
Judge CALHOUN, as conclusive of the appellant's right to
reversal. The case was given to the jury, and a recess
taken until 2 p. m. The verdict was received by the court,
and sentence pronounced in the absence of appellant's
counsel. See record pages 70 and 71. This was a fatal
error.

In *Penn* v. *State*, 62 Miss. 477, CAMPBELL, J., said, "It
is regrettable that prisoner's counsel were not present
when the verdict was received, but as the jury was polled,
and counsel couldn't have had anything more than that
done, if present, and it can't be said that any harm re-
sulted from the absence of counsel." This is a fair an-
nouncement by the court, that if the jury had not been
polled, harm would have resulted, and the case would
have been reversed—an indisputable right. The appel-
lant had to have the jury polled. This he had no op-
portunity of doing. No man charged with a capital crime
can be tried without an attorney. See Code 1906, section
1481.

Appellant's counsel was not notified that the jury had
agreed on a verdict, and having no other business in
court it was not necessary to remain at the court room
all the time. He was forty minutes late. During this
short interval, the court received the verdict, never polled
the jury, and sentenced the man to life imprisonment.
This looks to us like railroading.

*Ross A. Collins,* attorney-general, for the state.

If Schwartz had been absent, the objections made by learned counsel could not now be raised as no special objections were made as to this in the court below. Section 4936, of the Code of 1906, is as follows:

"A judgment in a criminal case shall not be reversed because the transcript of the record does not show a proper organization of the court below or of the grand jury, or where the court was held, or that the prisoner was present in court during the trial or any part of it, or that the court asked him if he had anything to say why judgment should not be pronounced against him upon the verdict, or because of any error or omission in the case in the court below, except where the errors or omissions are jurisdictional in their character, unless the record shows that the errors complained of were made ground of special exception in that court."

Counsel next contends that the lower court erred in not excusing certain jurors for cause. An examination of the record will disclose the fact that Juror Dunning was properly excused, because he stated that he could not render a fair and impartial verdict because it was a case of the killing of a negro by a white man. Juror Duffy had formed an opinion from street talk, but said that he could ignore what he had heard, and try the case solely and alone on the law and the evidence. Juror Lazarus said that he had no opinion now resting on his mind to see any verdict rendered, other than that to which the law and the evidence pointed, or would conduct.

I submit that Jurors Duffy and Lazarus were competent jurors: "In a case of this notoriety, it would be strange indeed if there existed many qualified jurors in the county of Calhoun" (Adams in the case at bar), "who had not heard of this killing. It is only essential to the securing of a fair and impartial trial that a juror be able to discard the rumors which he may have heard, and be

governed by the testimony adduced at the trial, and this these jurors have said they could and would do." *Cook* v. *State,* 43 So. 622.

"Appellant seems to contend that, if any kind of impression or opinion which a juror might have had upon entering the jury box required evidence to remove it, then such juror would be disqualified. Were it possible to obtain a jury without any prepossessions whatever concerning the guilt or innocence of the accused, it would be extremely desirable to obtain such a jury; but this is perhaps impossible, and therefore will not be required. The opinion which has been avowed by this court is that light impressions, which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute not sufficient objection to a juror; but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them which will combat that testimony and resist the force, do constitute a sufficient objection to him." *Whitehead* v. *State,* 52 So. 260.

"When the whole testimony was considered, and not mere excerpts from what the jurors stated, it was manifest that they were fair and impartial, and did not have any opinion about the case, which would disqualify them as jurors." *Murphy* v. *State,* 45 So. 866.

That is certainly the case with Jurors Duffy and Lazarus. In the case at bar, a careful scrutiny of the answers of the jurors shows that the opinion in each case was based on rumor merely, and all say that they had no bias or feeling or prejudice and could give a fair and impartial verdict without any influence of the rumors, thus bringing themselves within Revised Code of 1906, section 2685.

Appellant next claims that it was error for the court to receive the jury verdict in the absence of his attorney. The court's attention is directed to the testimony

of M. M. Reilly, Mr. Thames, and Mr. Wilmer Shields. By reading their testimony, the court will see that the lower court took a recess until two-thirty o'clock. Attorneys for appellant should have been in the court room at two o'clock. They were out-of-town lawyers, and I presume had no other business in the city of Natchez, except to attend to this case. How could the court know that they were still remaining in the city of Natchez? How did the court know that they wanted to be present when the jury came in? I do not think any error was committed by failing to wait until appellant's counsel returned, as the court could properly take the jury's verdict. I do not believe that it would have been necessary for the court to have polled the jury, but on that point the record does not show whether the jury was polled or not, but if it had been necessary, as required, that the jury be polled, the law presumes that the court did the. things that was required of it, so, in the absence of any information in the record as to this point, I submit that the court should presume that the jury was polled.

Argued orally by *W. K. McLaurin*, for appellant.

COOK, J., delivered the opinion of the court.

Appellant was tried and convicted in the circuit court of Adams county upon a charge of murder, and sentenced to a life term in the state penitentiary. From this judgment, he appeals to this court.

The evidence established the fact that appellant was guilty of an exceedingly atrocious murder. It is insisted that one of the jurors, who, over the objections of defendant, was permitted to try his cause, was shown on his *voir dire* to have formed a fixed opinion of the guilt of the defendant.

A careful reading of all of the questions to and answers of this juror, in our opinion, merely shows that he had an impression as to the guilt or innocence of the

accused, derived chiefly, if not entirely, from the press accounts of the crime; and we cannot say that the trial court erred in declaring this juror qualified to try the case. Some of his replies to interrogatories propounded by defendant's counsel, taken alone, seem to indicate a fixed opinion; but, in connection with all he said, there is no reason to believe that he was disqualified.

It is further said that the record does not disclose that the accused was present when the jury was impaneled. Conceding this to be true, this court will not reverse, because the transcript of the record does not show that he was present. Code 1906, section 4936.

The main point upon which the appellant relies for a reversal is that the defendant's counsel was not present when the jury returned its verdict, and when the court pronounced sentence upon the defendant. It appears that the court announced from the bench that the court would take a recess and reconvene at two o'clock. The jury returned its verdict, and sentence was pronounced at 2:30 o'clock, and the counsel for defendant did not come into court until 2:40 o'clock. A lawyer who has a case in court, if he desires to be present, should promptly attend upon the court at the time fixed by the trial judge for the convening thereof; and there was no duty imposed upon the court to wait or send for counsel, in order that he might be in court when the jury rendered the verdict against his client. Counsel asserts that no legal trial could be had of a capital case, unless the defendant be represented by counsel.

Section 26 of the Constitution confers upon the accused in criminal prosecutions "a right to be heard by himself, or counsel, or both;" and these rights cannot be denied, or abridged nor can the court require the accused to secure counsel, or impose counsel upon him, unless he requests the court to appoint counsel. Section 1481, Code of 1906, cited by counsel, povides that any person charged with a capital crime, and who is unable to employ coun-

sel, "shall, at his request, be allowed counsel," etc. It will be noted that the accused was, in fact, represented by counsel, who were selected and employed by him, and that his counsel voluntarily, so far as the record shows, absented himself, and refused or neglected to come into court, and no request was made by the accused that he be permitted to have his counsel present before the verdict was received or sentence imposed upon him. Appellant was not denied any right guaranteed him by the Constitution of the laws.

*Affirmed.*